United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 22, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

—————————————

No. 02-50566

—————————————

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

versus

NADIRA GASANOVA, SARDAR ELDAROVICH
GASANOV, also known as Sardar Gasanov,

                                        Defendants-Appellants.

—————————————————————————————

Appeal from the United States District Court for
the Western District of Texas
(USDC No. EP-01-CR-1423-2-DB)

————————————————————————————————————

Before KING, Chief Judge, REAVLEY and STEWART, Circuit Judges.

REAVLEY, Circuit Judge:*

       We add to the accompanying published opinion the following reasons for

affirming the judgment of the district court.

       1.       Sardar Gasanov had a sexual affair with one of the Gasanovs' victims,

———————————————

       *       Pursuant to 5TH CIR. R. 47.5, the Court has determined that this portion of its
ruling should not be published and is not precedent except under the limited circumstances set
forth in 5TH CIR. R. 47.5.4.

Marian Sabirova. This expectedly resulted in animosity between Sabirova and Nadira Gasanova, which Gasanova contends gave Sabirova an incentive to testify falsely against her. The district court refused to allow Gasanova to question Sabirova about the affair, concluding that such testimony would be more prejudicial than probative.[1] Gasanova contends that the district court's refusal to allow questioning violated her rights under the Sixth Amendment's Confrontation Clause. To sustain such a claim, Gasanova must prove that she was denied the opportunity "to expose to the jury facts from which the jurors . . . could appropriately draw inferences relating to the reliability of the witness."[2] There is no constitutional error unless "[a] reasonable jury might have received <u>a significantly different impression</u> of [Sabirova's] credibility had [Gasanova's] counsel been permitted to pursue his proposed line of cross-examination."[3]

The district court's decision to curtail cross-examination did not result in constitutional error. There was already substantial record evidence that Sabirova resented Gasanova. To begin with, Sabirova was a victim of Sardar Gasanov and Nadira Gasanova's illegal scheme and thus would be expected to begrudge both. Before the jury, Sabirova affirmed that she and Nadira had initially been "very close friends" but "ended up hating each other." The jury also heard that Nadira demanded that Sabirova

---

[1] See FED. R. EVID. 403. Gasanova does not contend that the district court misapplied Rule 403.

[2] Davis v. Alaska, 415 U.S. 308, 318 (1974).

[3] Delaware v. Van Ardsall, 475 U.S. 673, 680 (1986) (emphasis added).

pay $60,000 for return of Sabirova's passport, visa, and birth certificate. Sabirova also testified that Nadira threatened her, telling Sibirova "don't cross me" and "don't stand in my way." Sabirova stated that she believed Gasanova's threats were aimed not only at her but also at her family in Uzbekistan. We therefore conclude that the jury had ample opportunity to gauge Sabirova's credibility.

2. Midway into trial, an article appeared in the El Paso Times which reported that "there have been credible threats on the lives of the women and the lives of their families in Uzbekistan since the arrests of the Gasanovs." The article stated that the newspaper would not disclose the names of the women, at the government's request, in light of the supposed threats. The district court refused the Gasanovs' request to poll the jury to determine if any jurors were aware of the article. We review the district court's refusal to voir dire the jury about a media report for an abuse of discretion.[4] The district court acts within its discretion in refusing to test for the effect of a media report unless there are "serious questions of possible prejudice."[5] To determine whether there are questions of this gravity we conduct a two-step inquiry. First, we must examine media report to see if it is "innately prejudicial."[6] If we determine that the report is innately prejudicial we must then consider the probability that it actually reached the jury.[7]

---

[4] See United States v. Aragon, 962 F.2d 439, 443 (5th Cir. 1992).

[5] See United States v. Herring, 568 F.2d 1099, 1104 (5th Cir. 1978).

[6] See Aragon, 962 F.3d at 444.

[7] See id.

3

The El Paso Times article appeared the day after Marina Sabirova's first day of testimony. During her first day of testimony, Sabirova recounted being threatened by both of the Gasanovs. She said that Gasanov told her she would "have problems" if she reported him to authorities, which Sabirova understood to be a threat against her family in Uzbekistan. Similarly, Sabirova testified that Gasanova threatened her and her family. The Gasanovs contend that the newspaper article had the effect of bolstering Sabirova's credibility because in it the government's trial counsel, Brandy Gardes, described the threats against her as "credible." We note, however, that the two other victims later testified to also having been threatened by the Gasanovs. Thus, even if Ms. Gardes's reported comments strengthened Sabirova's testimony, the prejudice to the Gasanovs, in light of the testimony of the other victims, was negligible. The Gasanovs also point out that while Sabirova testified to pre-arrest threats, the article reported that there had been post-arrest threats as well. However, considering that the jury had already been exposed to evidence of pre-arrest threats, the suggestion that the Gasanovs had also threatened the women and women's families following the arrests would be unlikely to have anything more than a de minimus affect on the jury's perception of the Gasanovs. We therefore conclude that the article was not innately prejudicial.[8] The district's court refusal to voir dire the jury was not an abuse of discretion.

---

[8] In light of this conclusion, we need not consider whether the probability that the article reached the jury. See United States v. Martinez-Moncivais, 14 F.3d 1030, 1037 (5th Cir. 1994).

3.  The Gasanovs contest the sufficiency of the evidence upon which they were sentenced for count 1. We review the district court's findings in connection with sentencing for clear error.[9] The conspiracy charged in count 1 had three object offenses.[10] Under sentencing guideline 1B1.2(d), "A conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit."[11] Before sentencing, however, the sentencing judge first must determine whether the evidence supports conviction for conspiracy to commit each object offense.[12] In this case, the verdict of the jury was general, meaning that the jury convicted the Gasanovs of conspiracy without specifying which offense or offenses were the object of the conspiracy. The Gasanovs contend there was insufficient evidence to convict them of conspiracy to commit the third object offense listed in the indictment--violation of 18 U.S.C. § 1592. That statute proscribes "unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced labor."[13] To

---

[9]  See United States v. Buck, 324 F.3d 786, 792 (5th Cir. 2003).

[10]  Those offense were: 1) obtaining non-immigrant visas though false claims and statements, in violation of 18 U.S.C. § 1546; 2) knowingly making a false statement in an application for immigration documents, also in violation of § 1546; and 3) removing, concealing, confiscating, and possessing immigration documents to prevent the free movement of persons to retain control of their labor and services, in violation 18 U.S.C. § 1592.

[11]  U.S. SENTENCING GUIDELINES MANUAL § 1B1.2(d) (2002) ("U.S.S.G.").

[12]  See U.S.S.G. § 1B1.2, cmt. n.4.

[13]  18 U.S.C. § 1592 (Supp. 2003). The relevant portion of the statute provides:

5

prove conspiracy the government must show the existence of an agreement to commit an object offense together with an act in furtherance of that agreement.[14] The evidence readily indicates that the Gasanovs collaborated to withhold two of the women's documents, effectively keeping the women from leaving the Gasanovs or working elsewhere. We therefore conclude that the district court did not err in sentencing the Gasanovs for conspiracy to violate § 1592.

AFFIRMED.

---

(a) Whoever knowingly destroys, conceals, removes, confiscates, or possesses any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person--
    (1) in the course of a violation of section 1581, 1583, 1584, 1589, 1590, 1591, or 1594(a);
    (2) with intent to violate section 1581, 1583, 1584, 1589, 1590, or 1591; or
    (3) to prevent or restrict or to attempt to prevent or restrict, without lawful authority, the person's liberty to move or travel, in order to maintain the labor or services of that person, when the person is or has been a victim of a severe form of trafficking in persons, as defined in section 103 of the Trafficking Victims Protection Act of 2000,
shall be fined under this title or imprisoned for not more than 5 years, or both.

[14] See United States v. Onyiego, 286 F.3d 249, 254 (5th Cir. 2002).